666 A.2d 1310

OSTEOIMPLANT TECHNOLOGY, INC.

v.

RATHE PRODUCTIONS, INC.

No. 848, Sept. Term, 1995.

Court of Special Appeals of Maryland.

Nov. 6, 1995.

David F. Albright (Albright, Brown & Caudill, LLC, on the brief), Baltimore, for Appellant.

Max H. Lauten (Kramon & Graham, P.A., on the brief), Baltimore, for Appellee.

Argued Before DAVIS and HOLLANDER, JJ., and PAUL E. ALPERT, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

PAUL E. ALPERT, Judge, Ret., Specially Assigned.

In this appeal we are called upon to decide whether a foreign judgment, when recorded in Maryland, is then subject to post judgment revision proceedings under the Maryland Rules.

All parties involved agree that appellant, Osteoimplant Technology Inc., hired appellee, Rathe Productions Inc., multiple times in the early 1990's to build exhibits for the purpose of demonstrating appellant's wares at trade shows. The parties further do not dispute that in December 1993 the parties expressly agreed that appellant had an outstanding debt to appellee for the sum of $79,216. Additionally, appellant agreed to pay appellee a total of $229.15 in storage charges each month, commencing January 1994 and continuing until such time as the entire balance, consisting of $79,216 plus monthly storage charges, was paid in full.

During the early part of 1994, appellee brought suit against appellant after appellant failed to pay off its debt to appellee. Appellee filed its action in the United States District Court for the Southern District of New York. Appellant failed to respond to the summons and complaint in New York, and the federal court subsequently entered a default judgment against

appellant for the full amount of $83,878.37. Although appellant contested jurisdiction in the court below, both parties now acknowledge that the federal court had personal jurisdiction over the appellant in the original claim.

Appellee, having been awarded a default judgment in New York, soon after recorded the judgment in both the Circuit Court for Baltimore County and the United States District Court for the District of Maryland. Appellee initiated garnishment proceedings against appellant, and appellant then filed motions in the Maryland federal court to quash the writs of garnishment and to vacate the New York federal court's judgment. Appellant raised, as its key issue, an alleged failure on the part of appellee to credit appellant for $75,000 worth of payments. It is contended that the alleged payments in question were issued some time in 1991, a full two years before the parties stipulated that appellant still owed appellee $79,216 plus continuing storage fees. Further, though appellant had the opportunity to do so, the issue of the 1991 payments was not presented to the New York federal court.

In December of 1994, Judge Walter Black, United States District Court for the District of Maryland, heard oral arguments on the issue and rendered an oral opinion denying appellant's motion to vacate the New York federal court judgment. Appellant's subsequent motion for reconsideration was also denied in February, 1995. Appellant then filed a motion to vacate the New York federal court judgment in the Circuit Court for Baltimore County. Judge Alfred Brennan denied the motion to vacate, as well as subsequent motions to alter and amend the judgment. The issue now before this Court is: Can the Circuit Court for Baltimore County vacate, alter, or amend a judgment rendered by the United States District Court for the Southern District of New York, or may the judgment only be altered by the court which rendered it? Although there exists no Maryland case to guide us, the issue has been raised and resolved in many other jurisdictions and can easily be resolved here. We hold, subject to the qualifications noted below, that the judgment is only subject to reopen-

ing in the court which rendered the initial judgment. Hence, if appellant wishes to have the judgment vacated, altered, or amended, those issues must be addressed by the United States District Court for the Southern District of New York.

## DISCUSSION

■ Appellant argues that a foreign judgment, filed in Maryland, becomes a Maryland judgment in every conceivable way. Such a judgment, according to appellant, can be vacated, altered, or amended if a Maryland court sees fit to do so. Appellant, however, has not considered issues of *res judicata* and collateral estoppel. To permit appellant to reopen litigation in Maryland and address issues that were or could have been addressed in the previous forum would effectively subject appellee to trying its case over again.

Appellant points to § 11–802(b) of the Courts Article, wherein the Uniform Enforcement of Foreign Judgments Act is codified, for the pronouncement that

[a] filed foreign judgment has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying as a judgment of the court in which it is filed.

The language of section 11–802(b) seems, at first glance, to suggest that the Circuit Court for Baltimore County could reopen the case, but when one considers that some issues are not permitted to be relitigated anywhere because of principles of *res judicata* and collateral estoppel, the proper result becomes apparent.

Appellant relies upon *Imperial Hotel, Inc. v. Bell Atlantic Tri–Con Leasing Corp.*, 91 Md.App. 266, 603 A.2d 1371 (1992), as an example of a trial court that erred, and was subsequently reversed, when it required that the litigants before it return to the rendering court in order to resolve an issue. *Imperial Hotel*, however, can be distinguished from the case at bar because the issue in *Imperial Hotel* was whether the rendering court had personal jurisdiction over the defendants.

The issue before this Court today is much different; *i.e.,* whether the Circuit Court for Baltimore County can vacate, alter, or amend a foreign judgment after appellant neglected to raise an important issue when it had the chance at the trial level. The parties, unlike those in *Imperial Hotel,* are not disputing an issue of personal or subject matter jurisdiction. The difference between the two cases is sizeable and is critical to the outcome here.

■ Our analysis begins with Article IV, § 1 of the United States Constitution, which mandates that States give "full faith and credit" to each others' acts, records, and judicial proceedings. The United States Congress has prescribed, as authorized under the Full Faith and Credit Clause, the manner in which the Clause is to be given effect. 28 U.S.C. § 1738 (1988). Our courts are required to give full faith and credit to a judgment of a Federal court located in another state as a judgment issued by a State court within whose jurisdiction that Federal court is located. *Hancock Nat'l Bank v. Farnum,* 176 U.S. 640, 645, 20 S.Ct. 506, 508–509, 44 L.Ed. 619 (1900); *In re Humphreys,* 880 S.W.2d 402, 405 (Tex.1994). Without the Full Faith and Credit Clause, along with its statutory progeny, a defendant might be tempted to "forum shop." That is, a defendant could default at trial in a foreign jurisdiction for the purpose of moving the action to a more friendly venue.

■ The Minnesota Supreme Court, citing to the United States Supreme Court case of *Morris v. Jones,* 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488 (1946), had the opportunity to address a virtually identical issue in *Matson v. Matson,* 333 N.W.2d 862 (Minn.1983). The Minnesota Court recognized that

[i]t has been settled by the United States Supreme Court and courts of other states that the power of a state to reopen or vacate a foreign judgment is more limited than under the rules of civil procedure and that a foreign judgment cannot be collaterally attacked on the merits. After a foreign judgment has been duly filed, the grounds for

reopening or vacating it are limited to lack of personal or subject matter jurisdiction of the rendering court, fraud in procurement (extrinsic), satisfaction, lack of due process, or other grounds that make a judgment invalid or unenforceable. The nature and amount or other aspects of the merits (i.e., defenses) of a foreign judgment cannot be relitigated in the state in which enforcement is sought.

*Matson,* 333 N.W.2d at 867.

A New York State intermediate appellate court has also ruled on the issue in *Brittain v. Boston Pneumatic, Inc.,* 78 Misc.2d 511, 355 N.Y.S.2d 45 (N.Y.App.Term.1974). In *Brittain,* a case very similar to the one at bar, the defendants, in a New York County Court, moved to vacate a default judgment that had been entered in the United States District Court for the Northern District of Texas. The county court denied the motion, and upon review, the appellate court, bound by statute, explained:

> This court may not vacate a judgment entered in a court of another state.... [O]nly 'the court which rendered judgment' is authorized to relieve a party from it under certain circumstances....

*Brittain,* 355 N.Y.S.2d at 48. The Court went on to clarify further that:

> While a transcript of judgment may be 'docketed' in other counties, such docketing does not confer jurisdiction on those counties to vacate the judgment. Docketing a transcript of a judgment in other counties is in aid of enforcement. That the county in which the judgment was 'entered' is in a foreign state does not confer jurisdiction on the docketing county to vacate the judgment.... [J]udgment having been entered in the United States District Court for the Northern District of Texas, defendants must apply to that court to vacate it.

*Id.*

There can be little doubt that all courts must pay deference to the thoughtfulness and wisdom that go into judgments from foreign jurisdictions and must not, as a general rule, vacate,

alter, or amend those judgments unless there exists one of the deficiencies noted in *Matson.* Absent the necessary predicate, appellant is not entitled to reopen the merits of the foreign judgment. This rule of law regarding *res judicata* is plainly set forth in *Thompson v. Safeway Enterprises, Inc.,* 67 Ill. App.3d 914, 24 Ill.Dec. 561, 385 N.E.2d 702 (1979), in which the Illinois Appellate Court held:

> Under the doctrine of full faith and credit, the forum court will not rehear a case on its merits because the judgment is *res judicata* as to the nature and the amount of the plaintiff's claim. A judgment debtor may defend against a foreign judgment sought to be enforced in an Illinois court, but not on grounds which could have been presented in the action in which the judgment was rendered. The judgment is not subject to collateral attack except for the defenses of fraud in the procurement of the judgment or lack of jurisdiction in the court rendering it.

(Citations omitted.)

Appellant cites several other cases, including *People ex rel. Halvey v. Halvey,* 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947), *Glickman v. Mesigh,* 200 Colo. 320, 615 P.2d 23 (1980) (en banc), and *Salmeri v. Salmeri,* 554 P.2d 1244 (Wyo.1976), to demonstrate instances where the court of one State has altered judgments rendered in foreign jurisdictions. Appellant fails to note, however, that those cases all concern issues of alimony, child support, or child custody, and have nothing at all to do with the vacating or altering pure money judgments. The judgments in *Salmeri,* involving a modification of alimony and child supports; *Glickman,* involving a child support modification; and *Halvey,* involving a child custody modification, were all subject to modification when circumstances (financial or otherwise) arose that affected the ability to pay or support. Family law cases are controlled largely by State Code, like Maryland's Uniform Reciprocal Enforcement of Support Act (URESA), § 10–301 *et seq.,* of the Family Law Article, that enable States to alter foreign judgments that are, by their very nature, not final and open to modifications. *Barrell v. Barrell,* 288 Md. 19, 415 A.2d 579 (1980).

The strict money judgment rendered in the case at bar by the United States District Court for the Southern District of New York does not fall within the purview of URESA. Appellant's failure to present the Circuit Court with valid reasons, as compiled in *Matson*, why the Circuit Court should have vacated, altered, or amended the New York Federal Court's judgment is fatal to its cause. Here, appellee sought and obtained a valid judgment in New York and, barring a deficiency as listed in *Matson*, should not and will not be required to relitigate the merits of the case.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.